1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7            FOR THE DISTRICT OF ARIZONA
8

ANTON REID,           )
                     )
       Petitioner,    )
                     )
       v.           )    CIV 06-02436 PHX JWS (MEA)
                     )
PHILLIP CRAWFORD,    )    REPORT AND RECOMMENDATION
                     )
       Respondent.    )
_____)

TO THE HONORABLE JOHN W. SEDWICK:

      Mr. Anton Reid("Petitioner"), who is detained in the custody of the Department of Homeland Security at the Eloy Detention Center in Eloy, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on October 13, 2006.  Respondent filed a Response in Opposition to Petition for Writ of Habeas Corpus ("Response") (Docket No. 6) on December 6, 2006.  Additionally, on January 8, 2007, Petitioner filed a "Response Reconsideration for Writ of Habeas Corpus" ("Reply") (Docket No. 9).

      **I.  Procedural History**

      Petitioner is a native and citizen of Jamaica.  <u>See</u> Response, Exh. 1.  Petitioner was admitted to the United States as an immigrant on or about November 23, 1990, as a minor child with his family.  <u>See</u> <u>id.</u>, Exh. 2.  In 2003, Petitioner was convicted by the State of California of committing lewd and

lascivious acts with a child under 14.  Id., Exh. 2.[1]  Petitioner asserts he was sentenced to a term of one year, "but was given time served and release[d] on July 18, 2003."  Reply at 1-2.[2]

Petitioner contends he came to the attention of the Office of Immigration and Customs Enforcement ("ICE") when he applied for a replacement of his identification as a lawful permanent resident, after he lost his wallet.  Id. at 2. Petitioner was taken into federal custody on June 8, 2004.  See Response, Exh. 13.

On or about June 7, 2004, the Department of Homeland Security initiated removal proceedings against Petitioner by serving Petitioner with a Notice to Appear.  Id., Exh. 3.  The Notice to Appear charged Petitioner with being removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), i.e., that Petitioner was an immigrant

---

[1] The charges were predicated on one act of consensual sex with a 13-year-old-girl when Petitioner was 22 years of age.  Response, Exh. 1.  The girl initially mis-represented her age to Petitioner, who also mis-represented his age to the girl.  Id., Exh. 1.  Petitioner was later, prior to the act involved, informed of the girl's true age by the girl's parents.  Id., Exh. 1.  Petitioner had no prior adult or juvenile criminal record.  Id., Exh. 1.

[2] Previous decisions of this Court indicate Petitioner was sentenced to one year in prison and five years of supervised release. Response, Exh. 10 (order transferring Arizona District Court docket number 05-1191 pursuant to the REAL ID Act).  Petitioner, who is pro se, believes he is eligible for relief from removal based on the length of the prison sentence imposed by the State of California.  See Petition.  However, the matter before the court, i.e., the length of Petitioner's criminal sentence is not relevant to Petitioner's claims for relief from his continued immigration detention.  Response, Exh. 1.  As noted by the Immigration Judge during Petitioner's removal proceedings, "the Government didn't list" the sentence imposed by the State of California in the record because the nature of the crime of conviction, rather than the length of the  sentence imposed, provided the basis for finding Petitioner removable pursuant to federal immigration statutes.  Id., Exh. 1.

who had been convicted of an aggravated felony as that term is defined by federal immigration statutes, i.e., sexual abuse of a minor. Id., Exh. 3. See 8 U.S.C. § 1101(a)(43)(A) (2005 & Supp. 2006) (defining the term "aggravated felony" to include the crime "sexual abuse of a minor").

Petitioner appeared before an Immigration Judge ("IJ") and asked for a postponement of his proceedings in order to obtain counsel. Response, Exh. 1. Petitioner was granted a postponement, but Petitioner did not obtain counsel. Id., Exh. 1. Another hearing was held before the IJ on July 19, 2004, at which hearing Petitioner voluntarily proceeded *pro se*. Id., Exh. 1. Petitioner asserted he was eligible for cancellation of any order of removal because he had been lawfully in the United States for a period of ten years and he had not been sentenced to a term of imprisonment exceeding one year pursuant to his criminal conviction. Id., Exh. 1.[3]

Petitioner admitted the factual allegation charged in the Notice to Appear, i.e., his conviction for sexual abuse of a minor. Id., Exh. 1. Accordingly, the IJ found Petitioner removable from the United States. Id., Exh. 1. Petitioner designated Jamaica as his homeland and averred to the IJ he had

_____

[3] At the July 19, 2004, hearing, the Immigration Judge explained to Petitioner that some non-permanent residents (illegal aliens) who had been in the United States for a period of ten years and who had not been convicted of an aggravated felony are eligible for cancellation of an order of removal predicated on their unlawful status in the United States. Response, Exh. 1. The IJ further explained that some lawful permanent residents who had been convicted of a crime not classified as an aggravated felony are eligible for a cancellation of an order of removal. Id., Exh. 1. The IJ explained to Petitioner why Petitioner did not fall under either of these two categories of individuals eligible for cancellation of removal. Id., Exh. 1.

no fear of returning to Jamaica. Id., Exh. 1. The IJ determined Petitioner was not eligible for relief from removal because he had been convicted of an aggravated felony and ordered Petitioner be removed from the United States to Jamaica. Id., Exh. 1.

Petitioner appealed the IJ's decision to the Bureau of Immigration Appeals ("BIA"), seeking a waiver of removability and cancellation of the order of removal. Id., Exh. 5. Petitioner asserted, inter alia, that he had not been informed of the consequences of his guilty plea on his immigration status prior to entering his plea in the State of California prosecution. Id., Exh. 5.[4] The BIA summarily affirmed the IJ's decision and dismissed Petitioner's appeal on November 5, 2004. Id., Exh. 6. Petitioner sought review of the order of removal by the United States Ninth Circuit Court of Appeals. Id., Exh. 7. The Ninth Circuit ordered a stay of the order of removal pending the outcome of the proceeding. See Reid v. Ashcroft, No. 04-72699 (available via PACER). The Ninth Circuit declined substantive review of the order of removal in a decision issued April 12, 2005. Id. The Ninth Circuit Court of Appeals' mandate dismissing the appeal, which mandate also resulted in removing the stay of the execution of the order of removal, was issued May 4, 2005. Id.; Response, Exh. 8.

---

[4] The Court notes a document regarding entry of Petitioner's guilty plea and ordering preparation of a presentence report summarily (a checkmark in a box) indicates Petitioner was informed of potential consequences of his guilty plea on his immigration status at the time the state trial court accepted his guilty plea. Response, Exh. 1.

Petitioner filed an action pursuant to section 2241 in the United States District Court for the District of Arizona on April 15, 2005.  See Reid v. Gonzales, 2:05 CV 1191.  The petition for relief in that matter was transferred to the Ninth Circuit Court of Appeals on December 21, 2005, pursuant to the Real ID Act.[5]  Id., Docket No. 4; Response, Exh. 10.[6]  There is no stay of Petitioner's order of removal indicated in either the United States District Court docket of that matter or in the Ninth Circuit Court of Appeals docket, which indicates the case is still pending before the Ninth Circuit Court of Appeals as of January 29, 2007.  See Reid v. Gonzalez, No. 05-77345 (available via PACER).

---

[5] The relevant section of the REAL ID Act, Public Law No. 109-13 § 105(b), enacted May 11, 2005, states:

> EXCLUSIVE MEANS OF REVIEW.--Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

119 Stat. 231, 310-11, amending 8 U.S.C. § 1252.

[6] As of January 29, 2007, Petitioner had not filed an opening brief with the Ninth Circuit Court of Appeals, which brief was due September 18, 2006.  See Reid v. Gonzales, 05-77345, docket entry of April 27, 2006.  The Ninth Circuit Court of Appeals' docket in 05-77345 does not reflect the order of removal has again been stayed by Petitioner's filing of that action or automatically by its pendency before the Ninth Circuit.

-5-

Petitioner has now been detained in the custody of Respondent at the detention center in Eloy, Arizona, since June of 2004, a period of approximately 30 months.  On December 3, 2004, Petitioner was served with a notice of File Custody Review.  Response, Exh. 11.  Petitioner's continued detention in Respondent's custody was reviewed by the Department of Homeland Security on April 14, 2005, two days after the Ninth Circuit dismissed Petitioner's appeal of the order of removal but before the mandate was issued.  Id., Exh. 12.

Based on the information in Petitioner's file and after consideration of the information submitted by Petitioner, the Department of Homeland Security determined Petitioner should continue to be detained.  Id., Exh. 12.

This decision states:

> On March 25, 2005, your case was reviewed to consider you for release under an Order of Supervision.  For this review you provided several letters of support from your parents, your brother, your sister, your sister-in-law, and 3 other letters of support from close friends.  You told Deportation Officer Miller that you previously worked at Hartsill Trucking in Redding, California and that you would try to work there again if you were released.  However, you did not provide a letter offering you employment, there, or anywhere.
>
> It appears you have a place to live.  You failed to provide a letter offering you a job.  You did not provide any evidence of rehabilitation.  You have been recently convicted of a serious crime.  You are removable to Jamaica, pending a decision from the U.S. Court of Appeals.  Travel documents are routinely obtained for removals to Jaimaca (sic).
>
> All relevant factors must be considered in making a determination that you warrant release from custody.  You appear to be a flight risk, and could be a danger to the community.

> Pursuant to 8 C.F.R. 241.4(d)(1), the alien must demonstrate to the satisfaction of the Attorney General that his release would not pose a danger to the community or a significant flight risk. After having considered all available information in your case, I am unable to conclude that you would not be a danger to the community or that you would not be a flight risk, and that you would be able to comply with the requirements of an Order of Supervision. Therefore, your release from custody is denied.

Id., Exh. 12.[7]

On March 14, 2006, Petitioner was again served with a notice of File Custody Review.  Id., Exh. 13.  Petitioner's continued detention in Respondent's custody was again reviewed by the Department of Homeland Security.  Id., Exh. 14.  The Department of Homeland Security again determined Petitioner should continue to be detained.  Id., Exh. 14.  The decision to continue detention, issued April 4, 2006, mirrored the decision issued in April of 2005, regarding the reasons for continuing Petitioner's detention.  Id., Exh. 14.

The habeas petition, filed October 13, 2006, asserts Respondent's continued detention of Petitioner violates his constitutional right to substantive and procedural due process of law.  Petitioner contends he is a lawful permanent resident of the United States and that he is not a danger to the

---

[7] The officer considering Petitioner's release pending his removal was required to consider the nature and seriousness of Petitioner's conviction, other criminal history, the sentence imposed and the time actually served, any history of escape or failure to appear for judicial proceedings, Petitioner's probation history, any disciplinary problems while incarcerated or detained, evidence of rehabilitation or recidivism, equities in the United States, prior immigration history or violations, and Petitioner's cooperation in obtaining travel documents.  See Response, Exh. 13; 8 C.F.R. § 241.4(f) (2006).

community nor a flight risk and, therefore, that he should be released on bond pending his removal. Petitioner argues the nature of his conviction does not support the conclusion he is either a flight risk or a danger to the community. Petitioner maintains his 2003 California conviction resulted in a sentence of probation and time served, that he did not violate the terms of his probation, that he has not been convicted of any other offense during his years in the United States, and that he has cooperated in acquiring travel documents enabling his removal. Reply at 2. Petitioner asserts he is entitled to relief pursuant to the conclusion in <u>Zabadi v. Chertoff</u>, a decision issued by the United States District Court for the Northern District of California in 2005.[8] <u>Id.</u> Petitioner seeks his release from detention on bond because he has been detained for a longer period than is reasonable or constitutional, arguing there is no compelling need for Respondent to continue his detention. <u>Id.</u> at 3.

---

[8] In <u>Zabadi</u>, a section 2241 action, the United States District Court for the Northern District of California concluded the Department of Homeland Security was not authorized, under the statute in question, to arrest the petitioner pursuant to a Notice to Appear predicated on a state criminal conviction. The District Court reached this conclusion based on the fact the government did not take the petitioner into federal custody until two years after the petitioner had been released from state incarceration. <u>See</u> <u>Zabadi v. Chertoff</u>, 2005 WL 3157377, at *1 (interpreting 8 U.S.C. § 1252 as it applied to a petitioner who was in removal proceedings prior to 1997, noting the language of the statute required the Attorney General to "take into custody any alien convicted of any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii)..., *upon release of the alien from incarceration*, [and] shall deport the alien as expeditiously as possible...."). Petitioner contends this conclusion provides relief because, Petitioner alleges, he was not taken into custody until a year after his release from state custody.

The Court ordered Respondent to answer the petition, citing <u>Tijani v. Willis</u>, 430 F.3d 1241 (9th Cir. 2005).[9] Respondent contends <u>Tijani</u> is distinguishable from Petitioner's claims. Response at 3. In <u>Tijani</u>, the petitioner had been detained for a period exceeding two years during his removal proceedings. The Ninth Circuit Court of Appeals held the detention of a lawful permanent resident for two years and eight months, while removal proceedings were ongoing, violated the petitioner's constitutional rights. Respondent argues that, because the entirety of the detention involved in <u>Tijani</u> was pursuant to 8 U.S.C. § 1226(c), governing an alien's detention during removal proceedings, and Petitioner has not always been detained pursuant to section 1226(c), <u>Tijani</u> does not provide a basis for granting Petitioner relief. <u>Id.</u> at 3-4.[10]

Acknowledging the order of removal is administratively final, Respondent also asserts Petitioner's current action before the Ninth Circuit Court of Appeals has stayed the order of removal. Respondent maintains that, because the order of removal is stayed, the ninety-day "removal period" has not begun to accrue and Petitioner has not been detained beyond the

---

[9] In <u>Tijani</u>, a divided panel of the Ninth Circuit Court of Appeals held an alien was entitled to release on bail after being detained for two years and eight months during his removal proceedings. The Ninth Circuit held the alien's right to due process was violated because the alien's detention for this period did not conform to the INA's mandatory detention provision, or, alternatively, because detention for this time period violated the alien's right to substantive due process. <u>See</u> <u>Tijani v. Willis</u>, 430 F.3d 1241, 1242 (2005).

[10] Respondent also avers <u>Tijani</u> is distinguishable because the petitioner in that case sought a bond-determination hearing, and Petitioner "does not allege that he ever requested, or was denied, a bond hearing." Response at 6.

1   presumptively unconstitutional six-month time period following
2   the "removal period."[11]   In support of this argument, Respondent
3   cites the decision in <u>Kothandaraghipathy v. Department of</u>
4   <u>Homeland Sec.</u>, 396 F. Supp. 2d 1104 (D. Ariz. 2005).

5           **II.  Jurisdiction**

6           Because Petitioner challenges the constitutionality of
7   his detention, the Court has jurisdiction to consider the merits
8   of this claim in his federal habeas petition.   <u>See</u>
9   <u>Arreola-Arreola v. Ashcroft</u>, 383 F.3d 956, 964-65 (9th Cir.
10  2004).

11          **III.  Analysis**

12          This Court may issue a writ of habeas corpus to a
13  Department of Homeland Security detainee who is "in custody in
14  violation of the Constitution or laws or treaties of the United
15  States."   28 U.S.C. § 2241(c)(3) (2006).   Petitioner asserts
16  that his continued detention violates federal law and the United
17  States Constitution.   Furthermore, *pro se* pleadings are held to
18  less stringent standards than more formal pleadings drafted by
19  lawyers.   <u>See</u>, <u>e.g.</u>, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.
20  Ct. 285, 292 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S.
21  Ct. 594, 595 (1972).   A *pro se* habeas petition and any

_____

23          [11] Presumably writing in December of 2006, Respondent also
24  asserts:
            Petitioner has been detained for less than two years total
25          and his detention *during proceedings* to date lasted only
            nine months.   The remainder of his detention has been
26          because (1) he had a final order of removal and the
            government was required by statute to detain him and (2)
27          Petitioner's own continued litigation.
    Response at 2.   The Court notes that, if Petitioner has been detained
28  since June of 2004, in December of 2006 Petitioner had been detained
    for well over two years.

supporting submissions must be construed liberally and with tolerance by the reviewing court.  See, e.g., Brown v. Roe, 279 F.3d 742, 745 (9th Cir. 2002); Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

Federal law provides for the detention of removable aliens in two separate circumstances.  Section 236(c) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226, governs the detention of aliens who are not under an administratively final order of removal.  Section 231 of the INA, codified at 8 U.S.C. § 1231 governs the detention of aliens whose order of removal is administratively final.

Section 236(c)(1) of the INA requires the Attorney General to "take into custody any alien" who is deportable as an aggravated felon, pending the outcome of removal proceedings. 8 U.S.C. § 1226(c)(1)(B) (2005 & Supp. 2006).  Additionally, the Attorney General and his designees may not release an alien pending the finality of their removal proceedings if the alien has been convicted of a crime of "moral turpitude," which includes crimes defined as sexual abuse of a minor.  See id. §§ 1231(a)(2), 1182(a)(2)(A)(i)(1).[12]  Compare United States v. Pallares-Galan, 359 F.3d 1088 (9th Cir. 2004) (concluding an

---

[12] However, an alien could be entitled to a waiver of this basis for exclusion, because the section further provides an alien convicted of a crime of moral turpitude may be entitled to such a waiver if the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).
8 U.S.C. § 1182(a)(2)(A)(ii) (II) (2005 & Supp. 2006).

alien's conviction under the California Annoy/Molest a Child statute did not equate to the conviction of the "aggravated felony" of "sexual abuse of a minor"). Therefore, Petitioner's detention by the Attorney General pending the finality of his removal proceedings was required by federal statutes and did not violate Petitioner's constitutional rights.

Section 241 of the INA, codified at 8 U.S.C. § 1231, applies to the detention of aliens who are being held pursuant to an administratively final order of removal. This statute states: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Id. § 1231(a)(1)(A). Additionally, for particular categories of removable aliens, this section requires the Attorney General to detain the alien during the "removal period." See id. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible ... or deportable [on certain specified grounds].").

This section also explicitly allows, but does not require, the detention of an alien beyond the ninety-day removal period in certain circumstances, for example, if the alien does

-12-

not make a good faith effort to obtain the travel documents necessary to effectuate the order of removal.  <u>See</u> <u>id.</u> § 1231(a)(6).[13]    However, if an alien subject to an administratively final order of removal is not removed within the ninety-day removal period, the alien is entitled to a bond hearing.  <u>See</u> <u>id.</u> § 1231(a)(3); 8 C.F.R. § 241.1 (2006); <u>Small</u> <u>v. Reno</u>, 127 F. Supp. 2d 305, 308 (D. Conn. 2000).

The ninety-day limit on an alien's detention without a bond hearing pending his removal is not applicable until the "removal period" begins.  <u>See</u>, <u>e.g.</u>, <u>Kothandaraghipathy</u>, 396 F. Supp. 2d at 1107.  Ordinarily, the removal period begins when the order of removal becomes administratively final, i.e., upon conclusion of the BIA's review of the order of removal pursuant to an appeal by either party of the IJ's decision.  <u>See</u> 8 U.S.C. § 1231(a)(1)(B)(i) (2005 & Supp. 2006).[14]  However, if the alien

---

[13] Section 1231(a)(6) provides:
An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).
Additionally, if an alien's release "pose[s] a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States," the alien may be detained.  8 C.F.R. §§ 241.4(d)(1) & 241.4(e)-(f) (2006).

[14]
An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final:

-13-

appeals the order of removal and the reviewing court stays the removal order pending the resolution of the appeal, the "removal period" does not begin until the reviewing court issues its final order regarding the appeal. See id. § 1231(a)(1)(B)(ii); Kothandaraghipathy, 396 F. Supp. 2d at 1107. See also Baloqun v. INS, 9 F.3d 347, 350-51 (5th Cir. 1993); Riley v. Greene, 149 F. Supp. 2d 1256, 1261 (D. Colo. 2001) ("At least two federal circuit courts and several district courts have found that if an alien contributes to the delay of his departure he is not allowed the benefit of a release pending his actual removal, and the six-month period to effect an alien's departure is tolled."); Hinojosa-Perez v. Eddy, 55 F. Supp. 2d 1001, 1006-07 (D. Alaska 1999) ("Federal courts having considered analogous circumstances are in agreement that aliens who insist on postponing their own deportation have 'no constitutional right

---

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;
(b) Upon waiver of appeal by the respondent;
(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
(d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
(e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order;  or
(f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period except where the respondent has filed a timely appeal with the Board. In such a case, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted or reinstated by the Board or the Attorney General.
8 C.F.R. § 241.1 (2006).

-14-

to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.'").[15]

Respondent maintains the current action in the Ninth Circuit has stayed Petitioner's removal period. Response at 4.[16] The Court can find no record that the Ninth Circuit has stayed Petitioner's order of removal pending resolution of the current action before the Ninth Circuit Court of Appeals.[17]   Although Petitioner has an action pending before the Ninth Circuit, the Ninth Circuit has not explicitly stayed the order of removal again pending the resolution of that action (No. 05-77345), as it did during the initial appeal of the order of removal (No. 04-72699).

Accordingly, the Court concludes the ninety-day removal period began on May 4, 2005, when the Ninth Circuit issued its

---

[15] Federal statutes provide that an alien subject to a final order of removal who refuses to make a timely, good faith application for documents necessary to effect his removal, faces criminal fines and/or imprisonment.  See 8 U.S.C. § 1253(a)(1)(B) (2005 & Supp. 2006).

[16] Respondent also argues "Petitioner's detention during his proceedings," presumably governed by section 1226, "ended on November 5, 2004 when the BIA affirmed the IJ's decision and petitioner's Order of Removal became final.  The total time of petitioner's detention, during proceedings, was just slightly short of five months." Response at 5.

[17] The Inmate Locator function of the United States Bureau of Prisons website, which includes immigrant detainees, indicates Mr. Reid was released from detention on March 21, 2006.  The Court contacted the detention center on or about January 19, 2007, and was informed Mr. Reid is still in detention, although the detention center's own computer system indicated otherwise.

mandate in No. 04-726996 and lifted the stay of the order of removal.  This conclusion is supported by Respondent's initiation of reviews of Petitioner's detention or release on bond pending his removal, which would not be allowable were Petitioner still being detained pursuant to section 1226, which governed his detention and required his detention prior to the finality of his removal proceedings. Compare Kothandaraghipathy, 396 F. Supp. 2d at 1107; Hinojosa-Perez, 55 F. Supp. 2d at 1006-07.  See also Del Pilar v. United States Att'y Gen., 326 F.3d 1154, 1156 (11th Cir. 2003); 8 U.S.C. § 1101(a)(47)(B) (2005 & Supp. 2006);  8 C.F.R. § 241.1 (2006).

Since May 4, 2005, Petitioner has been detained pending his removal to Jamaica pursuant to an administratively final order of removal.  As of February 4, 2007, this is a period of approximately 21 months, far exceeding the ninety-day removal period.

The United States Supreme Court has concluded section 1231 does not authorize the indefinite detention of an alien under an administratively final order of removal pending their ultimate removal from the United States.  See Zadvydas v. Davis, 533 U.S. 678, 701-02, 121 S. Ct. 2491, 2504-05 (2001).  Pursuant to the Supreme Court's decision in Zadvydas, this statute imposes an implied six-month limit on post-removal-period detention, provided the alien's actual removal from the United

States is not reasonably foreseeable.  <u>See</u>, <u>e.g.</u>, <u>Arango-Marquez v. INS</u>, 346 F.3d 892, 898-99 (9th Cir. 2003); <u>Lin Guo Xi v. United States Immigration & Naturalization Serv.</u>, 298 F.3d 832, 835 (2002).[18]

Additionally, the Supreme Court concluded in <u>Zadvydas</u> that, except for certain statutorily defined categories of criminal aliens, protecting the public does not justify the indefinite detention of an alien pending the execution of an order of removal.  <u>See</u> 533 U.S. at 691, 121 S. Ct. at 2499 ("In cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.").

Subsequent to <u>Zadvydas</u>, the Attorney General enacted

_____

[18] In <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S. Ct. 2491 (2001), the Supreme Court examined section 1231 to determine whether aliens may be detained *indefinitely* beyond the removal period, pending their deportation.  The Supreme Court concluded that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  <u>Id.</u>, 533 U.S. at 688-89, 121 S. Ct. at 2498.  To avoid the constitutional difficulty, the Court decided to read an implicit time limitation into section 1231(a)(6), and determined that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  <u>Id.</u>  The Court concluded that if removal of an alien is not reasonably foreseeable, a court should hold that his continued detention is unreasonable and order his release.  <u>Id.</u>, 533 U.S. at 699-700, 121 S. Ct. at 2504.  The Court determined that six months was the presumptive limit on the "reasonably necessary" period of time to detain an alien beyond the removal period.  <u>See id.</u> 533 U.S. at 700, 121 S. Ct. at 2505.

new regulations establishing a custody review procedure for removable aliens. <u>See</u> 8 C.F.R. § 241.13 (2006). The Department of Homeland Security must engage in "special review procedures" for those aliens subject to a final order of removal after the expiration of the removal period. <u>Id.</u> § 241.13(a).

The federal regulations further provide:

> Showing by the alien. The district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States. The district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner may also, in accordance with the procedures and consideration of the factors set forth in this section, continue in custody any alien described in paragraphs (a) and (b)(1) of this section.

<u>Id.</u> § 241.4.

The applicable regulations require the alien to provide good reason to believe there is no significant likelihood of removal to the country to which he was ordered removed in the reasonably foreseeable future. <u>See id.</u> § 241.13(a). The alien must commence the custody review process by submitting a request, after which ICE will conduct a review to determine whether there is no significant likelihood the alien will be

-18-

removed in the reasonably foreseeable future.   Id. § 241.13(c).

Respondent does not contend Petitioner's removal is foreseeable.   Respondent contends: "The only reason petitioner is detained while his case is pending before the Ninth Circuit is because of his own continued litigation.   An alien's own lawful, self-initiated litigation which has the collateral consequence of prolonging his detention, extends the removal period."   Response at 6, citing Doherty v. Thornburg, 943 F.2d 204, 211 (2d Cir. 1991).[19]   However, Respondent does not indicate where in the record the Petitioner's current action before the Ninth Circuit has stayed the execution of the order of removal. Furthermore, at least one federal court has concluded an alien should not be effectively punished by pursuing legitimate remedies for his situation.   See Hoang Minh Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003) (concluding an alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him).[20]

---

[19] The petitioner in Doherty was convicted of murder in Great Britain and had been held in INS detention for a period of eight years during the pendency of his removal proceedings.   The Second Circuit Court of Appeals' pre-Zadvydas opinion, issued by a divided panel, concluded the petitioner's detention did not violate his right to due process.   This conclusion was premised at least in part on the fact the petitioner was responsible for the great majority of the delay in his removal proceedings.   See 943 F.2d at 212.

[20] The Court further notes that, pursuant to a recent decision of the Ninth Circuit Court of Appeals, Petitioner's underlying order of removal may not withstand scrutiny.   Petitioner may be entitled to

Although the burden is presumably on Petitioner to establish he is entitled to a bond hearing by showing his removal is not foreseeable in the near future, see Lin Guo Xi, 298 F.3d at 839-40, Respondent's glib statement that aliens are frequently removed to Jamaica begs the question of why the Attorney General has not effectuated Petitioner's removal to Jamaica.  Respondent notably does not aver Petitioner has not cooperated in acquiring travel documents, but instead points to Petitioner's initiation of an action, which has not had the collateral effect of staying his removal, as being the obstacle to his removal.  The Court concludes there is evidence from which to conclude Petitioner's removal is not likely in the foreseeable future.  See Singh v. Gonzales, 448 F. Supp. 2d 1214, 1219-20 (W.D. Wash. 2006).[21]

---

withholding of removal pursuant to the decision in Afridi v. Gonzales, 442 F.3d 1212, 1220 n.4 (2006).  See also Morales v. Gonzales, 472 F.3d 689, 701 (9th Cir. 2007).

[21] Another federal District Court within the jurisdiction of the Ninth Circuit Court of Appeals has rejected arguments by the Attorney General similar to the ones offered in this matter.  See Singh v. Gonzales, 448 F. Supp. 2d 1214, 1219-20 (W.D. Wash. 2006).  In that matter the District Court considered the continued detention of an alien ordered removed to India.  Id.  Noting the statement in Zadvydas that the choice before the Attorney General is not between detention and "living at large," the District Court concluded the Department of Homeland Security had unconstitutionally and improperly held the alien without affording him due process of law.  Id.
     Alternatively, respondents contend that petitioner's continued detention is lawful because petitioner's repatriation to India will occur in the reasonably foreseeable future. [] Respondents assert that ICE has been successful in repatriating Indian citizens and that ICE has done all it can to obtain travel documents from India. [] Petitioner challenges respondents' claim that he will be

-20-

The true issue before the Court is whether the continuation of Petitioner's detention pending his ultimate removal violates his substantive due process right to liberty or his right to procedural due process of law. Petitioner was granted a bond hearing subsequent to his order of removal becoming administratively final, in April of 2006. The Department of Homeland Security determined Petitioner had not established he was not a flight risk or a danger to the community, primarily because Petitioner had not presented evidence he had a solid offer of employment if released from detention.

In a concurring opinion in <u>Demore v. Hyung Joon Kim</u>, 538 U.S. 510, 123 S. Ct. 1708 (2003), regarding the mandatory

removed in the reasonably foreseeable future, contending that two travel document requests have been sent to the Indian Embassy, and the only feedback ICE has received regarding the travel documents is a May 8, 2006, statement that it "[c]ould be another 90 days before [ICE] get[s] any information." (Dkt. # 15 at R256).
   The Court finds that petitioner has met the <u>Zadvydas</u> standard of showing that there is no significant likelihood he will be removed in the reasonably foreseeable future. Petitioner has fully cooperated with ICE's efforts to obtain a travel document for him since November 2005. ICE, however, has provided no substantive indication regarding how or when it expects to obtain the necessary travel document from the Indian government. Rather, ICE merely asserts that it has followed up on its request for travel documents from India and done all it can. [] This is not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in the reasonably foreseeable future.
   Accordingly, the Court finds that petitioner has shown that there is no significant likelihood of his removal to India in the reasonably foreseeable future. The six-month period established by the Supreme Court in <u>Zadvydas</u> expired on November 29, 2003, and petitioner should be released.

detention of an alien during removal proceedings without an
individualized determination of their risk of flight,[22] Justice
Kennedy stated:

> [S]ince the Due Process Clause prohibits
> arbitrary deprivations of liberty, a lawful
> permanent resident alien such as respondent
> could be entitled to an individualized
> determination as to his risk of flight and
> dangerousness *if the continued detention
> became unreasonable or unjustified*.
> <u>Zadvydas</u>, 533 U.S., at 684-686, 121 S. Ct.
> 2491; <u>id.</u>, at 721, 121 S. Ct. 2491 (Kennedy,
> J., dissenting) ("[A]liens are entitled to be
> free from detention that is arbitrary or
> capricious"). *Were there to be an
> unreasonable delay by the INS in pursuing and
> completing deportation proceedings, it could
> become necessary then to inquire whether the
> detention is not to facilitate deportation,
> or to protect against risk of flight or
> dangerousness, but to incarcerate for other
> reasons*.

538 U.S. at 531-32, 123 S. Ct. at 1722 (emphasis added).

Petitioner does not assert he has not been given an
bond hearing. However, the Court notes Petitioner's last bond
hearing was approximately one year ago, and that neither of
Petitioner's "individualized" bond hearings gave proper weight
to all of the equities weighing in favor of Petitioner's release
on bond pending his removal. Petitioner's case is clearly

---

[22] "Such detention necessarily serves the purpose of preventing
deportable criminal aliens from fleeing prior to or during their
removal proceedings, thus increasing the chance that, if ordered
removed, the aliens will be successfully removed..." <u>Demore v. Hyung
Joon Kim</u>, 538 U.S. 510, 528, 123 S. Ct. 1708, 1720 (2003).

distinguishable from a published federal court opinion concluding there was "ample evidence" to support the Attorney's General to continue detention of an alien beyond the removal period. See Dennis v. Bureau of Immigration & Customs Enforcement Interim Field Office Dir. for Det. & Removal for Middle Dist. of Pa., 426 F. Supp. 2d 252, 258-59 (M.D. Pa. 2006). The Court concludes Petitioner's situation is the exact situation imagined by Justice Kennedy in his concurring decision in Demore.

As noted supra, the officer considering Petitioner's release pending his removal was required to consider the nature and seriousness of Petitioner's conviction, other criminal history, the sentence imposed and the time actually served, any history of escape or failure to appear for judicial proceedings, Petitioner's probation history, any disciplinary problems while incarcerated, evidence of rehabilitation or recidivism, equities in the United States, prior immigration history or violations, and Petitioner's cooperation in obtaining travel documents.[23]

---

[23]
(f) Factors for consideration. The following factors should be weighed in considering whether to recommend further detention or release of a detainee:
(1) The nature and number of disciplinary infractions or incident reports received when incarcerated or while in Service custody;
(2) The detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences imposed and time actually served, probation and criminal parole history, evidence of recidivism, and other criminal

The officer determined Petitioner should not be released because he was a flight risk.

The Court concludes the officer ignored the fact the State of California imposed a lenient penalty on Petitioner's offense, i.e., a year in prison (or time served) and supervised release, presumably after reaching the conclusion Petitioner was not a danger to the community.  Additionally, Petitioner had no other criminal history, did not have a record of offenses committed while incarcerated or in detention, and Petitioner did not have a record of failing to appear for court hearings or meetings or while on supervised release.  There was no evidence of recidivism, Petitioner's entire family resided in the United States and vouched for his good character and their support, and Petitioner had no prior immigration offenses.  Petitioner had cooperated in obtaining travel documents.  The officer's decision that Petitioner was a flight risk and a danger rested solely on the fact Petitioner had not established he had an offer of employment waiting for him upon his release.

---

history;
(3) Any available psychiatric and psychological reports pertaining to the detainee's mental health;
(4) Evidence of rehabilitation including institutional progress relating to participation in work, educational, and vocational programs, where available;
(5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully;
(6) Prior immigration violations and history.
8 C.F.R. § 241.4 (2006).

Arguably the only valid reason for continuing an alien's detention without bond pending their removal, as established by the federal courts, is to ensure a petitioner's ultimate removal from the United States.[24]  There is no evidence before this Court that Petitioner will fail to appear for his removal when the Attorney General eventually effectuates the IJ's order.[25]

Petitioner has a constitutionally-protected fundamental

---

[24]
The government in <u>Zadvydas</u> offered another justification for the continued detention--"protecting the community." <u>Zadvydas</u>, 533 U.S. at 691, 121 S. Ct. 2491. The Court squarely rejected this as a justification for continued detention, finding that "preventative detention based on dangerousness" is only permissible "when limited to specially dangerous individuals and subject to strong procedural protections." <u>Id.</u> at 691-92, 121 S. Ct. 2491. If the justification of "protecting the community" was offered in <u>Demore</u>, the Court did not discuss it. The detention in that case was justified solely on the basis of preventing flight.
<u>Tijani v. Willis</u>, 430 F.3d 1241, 1249 n.9 (9th Cir. 2005)(Tashima, J., concurring).  The Court notes that, in <u>Tijani</u>, the majority opinion of a panel of the Ninth Circuit Court of Appeals stated "the government [must establish] that [the petitioner] is a flight risk or will be a danger to the community."  430 F.3d at 1242.

[25]  In an unpublished opinion which is persuasive but not precedential, the Eastern District of Louisiana reasoned:
Regulation 241.14 authorizes the continued detention of a removable alien, despite a finding that removal will not take place within the reasonably foreseeable future, where the alien poses a special risk, which is limited to: aliens carrying contagious diseases that pose a public safety risk; aliens detained who pose serious adverse foreign policy consequences; aliens detained because of antiterrorism concerns; and aliens determined to be especially dangerous by virtue of the severity of their crimes, or by virtue of mental illness. This regulation does not allow the government to consider risk of flight as a continued detention factor.
<u>Jabir v. Ashcroft</u>, 2004 WL 60318, at *5.

liberty interest in avoiding potentially indefinite detention. <u>Zadvydas</u>, 533 U.S. at 696, 121 S. Ct. at 2502 ("an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used,[], the Constitution permits detention that is indefinite and potentially permanent").  This Court believes, and at least one other federal court agrees, that Petitioner is entitled to a <u>meaningful</u> review of his detention pending his removal.  <u>See</u> <u>Patel v. Zemski</u>, 275 F.3d 299, 307 (3d Cir. 2001); <u>Dennis</u>, 426 F. Supp. 2d at 260.[26]

The Court concludes neither of Petitioner's custody

---

[26] In a pre-<u>Zadvydas</u> decision, the United States District Court for the District of Oklahoma held an alien was entitled to relief where the panel reviewing his detention "focused on the acts that led to petitioner's conviction, which occurred more than four years ago...," "[r]ather than analyzing petitioner's current status". <u>Tin Trong Nguyen v. INS</u>, 108 F. Supp. 2d 1259, 1265-66 (W.D. Okla. 1999). The court found the Attorney General's decision to detain the alien invalid because, inter alia, "there was no discussion of whether petitioner currently represents a danger to the community..." <u>Id.</u> That court noted an internal agency memorandum "specifically provides that '[t]he fact that the alien has a criminal history does not create a presumption in favor of continued detention.'"  <u>Id.</u>
    This opinion was predicated on the Third Circuit Court of Appeals' decision in <u>Chi Thon Ngo v. Immigration & Naturalization Serv.</u>, 192 F.3d 390, 399 (1999).  The court in <u>Ngo</u> stressed that "[d]ue process is not satisfied, however, by rubberstamp denials based on temporally distant offenses.  The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." <u>Id.</u>  In <u>Ngo</u>, the Third Circuit concurred that such a review does not comport with due process.  <u>See</u> <u>id.</u>
    Additionally, the Western District of Washington has criticized post-removal proceedings because "Directors simply relied on the aliens' past criminal history and the fact that they were facing removal from the United States, summarily concluding that the aliens posed such risks and denying them release." <u>Binh Phan v. Reno</u>, 56 F. Supp. 2d 1149, 1157 (W.D. Wash. 1999).

interviews was meaningful.  The factors weigh in favor of a finding Petitioner is not a flight risk, i.e., his appearances and acceptance of responsibility in his state criminal proceedings, including successfully completing and complying with the terms of his probation, his lack of any other criminal activity, and his ties to the community.  Petitioner has not expressed a fear of being removed to Jamaica.  Petitioner was not, apparently, a danger to the community; although his conviction was for a categorically serious crime, i.e., sex with a thirteen-year-old girl, the act involved was consensual. Additionally, in the commission of his crime or otherwise Petitioner has not shown any propensity to violence or any other criminal behavior.  Prior to his immigration detention, Petitioner had not re-offended or violated his probation nor had Petitioner any record of disciplinary problems while incarcerated by the state or while in immigration detention.

### IV.  Conclusion

Petitioner's order of removal is final and, therefore, his continued detention is governed by 8 U.S.C. § 1231. Petitioner has been held beyond the ninety-day removal period and has been held beyond the presumptively constitutional six-month period exceeding the removal period.  The very fact Petitioner has been detained over one year beyond the lifting of

-27-

the stay of the order of removal indicates Petitioner's removal is not likely in the foreseeable future and, therefore, that Petitioner is being held in violation of his right to substantive due process.  Although Petitioner has been given a bond hearing, the substance of the hearing has been meaningless and the Attorney General has abused his authority in ordering Petitioner's continued detention based on the fact of his conviction and the fact Petitioner does not have assured employment on his release, thereby violating Petitioner's right to procedural due process.

**IT IS THEREFORE RECOMMENDED** that Mr. Reid's Petition for Writ of Habeas Corpus be **granted**.

**IT IS FURTHER RECOMMENDED** the Court order Petitioner's immediate removal from the United States or his release from federal detention under an order of supervision on conditions that the government believes are appropriate under the circumstances within a period of thirty days from the date the Court issues its order in this matter.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir.) (en banc), cert. denied, 540 U.S. 900 (2003). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 31st day of January, 2007.

Mark E. Aspey
United States Magistrate Judge